IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-255 |
| | ) | |
| Plaintiff | ) | JUDGE SARA LIOI |
| | ) | |
| -vs- | ) | |
| | ) | **DEFENDANT'S MOTION TO STRIKE** |
| JOHN GEORGE MEDAS, | ) | **GOVERNMENT'S SENTENCING** |
| | ) | **MEMORANDUM  (DOC #40) AND** |
| | ) | **TO PRECLUDE ARGUMENT BASED** |
| Defendants | ) | **THEREON** |

Now comes the Defendant, John Medas, by and through the undersigned counsel, and respectfully moves this Honorable Court for an Order striking the Government's Sentencing Memorandum (Doc # 40) and precluding the government from arguing certain themes raised therein which are not based upon accurate facts.

This Motion is made for the reasons set forth in the attached Brief in Support.

Respectfully submitted,

*/s/Robert A. Dixon*
Robert A. Dixon (0022466)
4403 St. Clair Ave.
Cleveland, Ohio 44103
(216) 432-1992
e-mail: Dixonlaws@aol.com

## BRIEF IN SUPPORT

Procedural Background

This case was previously most recently set for sentencing on February 1, 2022. However, at approximately 5:15 p.m. the evening before the sentencing the government filed their Sentencing Memorandum (Doc #40). The government argues for a maximum guideline sentence herein based upon what is characterized as "egregious". They allege that "[h]is scheme was rational, calculated and executed over a span of several years." (Memo at Pg ID 224). They make request of the Court for a severe sentence based on a Memorandum chock full of mischaracterizations, skewed or incorrect facts, unsubstantiated assertions and conclusions. The defense asserts that it would be improper for this sentencing court to base its sentence in any part based upon the misinformation and baseless character attacks contained in the government's Memorandum. Further, the Defense is concerned with the record created in this case with the inclusion of the Memorandum.

Due to the last minute filing by the government after normal business hours, counsel did not have an opportunity to review the Memorandum until very late at night. Based thereon, the defense requested, and was granted a continuance of the sentencing until February 10, 2022.

Since the time of the continuance defense counsel has attempted to diligently and thoroughly investigate the government's numerous and serious allegations of purported fact, all of which are clearly designed to tarnish the character of the Defendant before this sentencing court.

While counsel has spent considerable time and effort locating and reviewing documents and speaking to necessary persons, the process of gathering information to refute a large amount of the government's claims is still ongoing.

Purpose of this Motion

The defense does not file this Motion without serious deliberation and consideration of potential alternatives. However, due to the significant amount of what the defense asserts is pure misstatement of fact, and the government's reliance on those purported facts in attempting to advocate for the harshest sentence possible, it is believed that the only appropriate remedy is that the Memorandum be ordered stricken and any argument based thereon be precluded. To be clear, the defense makes no claim that the government intentionally misstated fact in the filing. However, the defense does believe that the government received information from an unknown source and failed to adequately check the veracity thereof.

This Motion is not intended to comprehensively refute each and every allegation that is believed to be inaccurate as the defense is still in the process of interviewing persons with knowledge and gathering documents, all of which was not anticipated before the filing of the government's Memorandum. However, as set forth below, the defense is confident that they can refute several key foundations of the government's Memorandum. It is asserted that these matters so taints the Memorandum that it should be stricken in whole based on those alone.

Examples of Incorrect factual assertion and argument

Following are several areas the defense is confident in asserting are based upon incorrect or skewed facts and are inappropriate for consideration by this sentencing court. This is not

intended as an exhaustive list but are believed to be of such significant nature that they at least undermine the credibility of the Memorandum and at worst have placed improper argument before the court.

1. The Memorandum is absolutely incorrect when it asserts (along with Medas family photos) that: "While the Medas family was vacationing in Florida, P.P., a Medas employee was awaiting his daughter E.P's spinal surgery, scheduled for October, 2016." (Memo at Pg ID 216). In fact, the Medas visit to Epcot center was three years later in 2019. Counsel believes that he can produce conclusive proof of this fact.

2. The Memorandum falsely asserts: "When P.P. confronted Medas about P.P.'s terminated health insurance, Medas fired P.P. who was then forced to find new employment with health insurance, enroll and endure a waiting period for the health insurance." (Memo at Pg ID 217). In fact, P.P was not terminated or fired at that time. He remained employed continuously until he resigned on October 30, 2017. Shortly after this resignation he returned and pleaded with Mr. Medas to re-hire him. Mr. Medas did re-hire P.P on November 13, 2017. Eventually P.P. was fired on February 17, 2018. It was P.P.'s actions after he returned in attempting to at least destroy Medas' customer base and/or attempt to take over the business. This was subject of the lawsuit filed in Cuyahoga county Common Pleas court and will be discussed further below.

    3. The Memorandum alleges that Medas "filed retaliatory lawsuits against the P.P. family" and goes on to incorrectly and recklessly allege without basis in fact that Medas countersues on "nonsensical allegations" and that he also counterclaimed against E.P. (Memo at Pg ID 219). First it must be noted that no counterclaim was asserted

against E.P. While the original counterclaim filed in Case No. 1:18-cv-01514-CAB stated it was "against the plaintiffs" (See Doc#14, Pg ID # 149) there was no cause of action plead against E.P. Indeed, her name does not appear in the counterclaim and ¶17 of the counterclaim states that damages were incurred on account of P.P.'s tortious behavior alone. Thus, the assertion that Mr. Medas filed a retaliatory action against E.P. is, at best, misleading. The Memorandum goes on to assert the suit filed against "J.P.", the wife of "P.P." in Cuyahoga County Common Pleas Court, was based on "delusional claims". (Memo at Pg ID 219). However, this characterization, like many others in this memo intended to place Mr. Medas in a bad light, is baseless and causes counsel to question whether the government took the time to review the suit and its disposition and what it bases its assertion upon. That case involved a claim that P.P., J.P and others were working to at very least damage Medas' business relations with customers and eventually take over the client base and/or business itself. That suit was litigated until it was dismissed by Mr. Medas as part of the settlement of the federal suit. Despite the government's false characterization of Medas' civil actions as "nonsensical and delusional, none were ever dismissed by any civil courts, nor were any subject of any motion for frivolous conduct under FRCP 11, or Ohio Civil Rule 11. In fact, on June 24, 2019 the federal court denied P.P's attempt to dismiss a counter-claim. (See 1:18CV1514 Doc#35)

4. The Government attempts to portray Mr. Medas as obstructionist in responding to discovery in the federal suit and ultimately concludes that Medas "was not acting in good faith in discovery." (Memo at g. ID 219). Since the AUSA herein was not a litigant in that case it must be assumed that information supporting this assertion was from some

collateral source. However, it appears once again that some fact-checking should have taken place before placing this particular character attack before this sentencing court. In fact, while there was a Motion to Compel discovery, there was never a finding of bad faith or any sanction levied for discovery failure.

5. The government attempts to convince this Court that Medas "subjected E.P. (the daughter of P.P) to a needless deposition". This assertion is at best misguided, uninformed, and obviously a further attempt to tarnish Mr. Medas' character before this sentencing court with the veiled assertion that his counsel took E.P's deposition for an illicit purpose.

   However, had the government bothered to check, they would have learned that it was P.P and his legal counsel that made E.P. a party to the civil case upon a claim of intentional infliction of emotional distress. If called upon, Mr. Medas civil attorneys will indicate the absolute necessity for a deposition when such claim is asserted. They would further detail their respectful and professional conduct during the deposition. Therefore, this assertion by the government is without substance. Further, it was pnly approximately two weeks after the deposition that the case was settled for approximately 7% of the original claim for damages.

6. The government asserts breach of the settlement agreement by Mr. Medas. (Memo at Pg ID 219-220). While it is true that Mr. Medas struggled at times to make timely payments, two facts remain: First, the Federal Court having jurisdiction over the case has never issued any Orders relating to Mr. Medas late payments and, secondly, payments are now current with only two or three scheduled payments remaining.

7. Turning to the nature and circumstances of the offense, the government asserts that Mr. Medas used company funds to "pay for a Cadillac Escalade, family vacations in Hilton

Head Island, South Carolina, Florida, Whiskey Island boat dockage fees, wire transfers to family members ($47,500), and his daughter's college tuition at the University of Dayton." (Memo at Pg ID 222) No source of information is cited by the government for these claims. The undersigned counsel believes based upon reasonable investigation that the true facts are otherwise. It is not clear exactly what travel the government asserts was illegitimately charged as company expense. However, Mr. Medas wife in her employment at Metrohealth frequently attended conferences out of town. Mr. Medas would occasionally accompany her on these trips at no expense to the company. Further, Mrs. Medas took a second job at East Carolina University to pay for expenses such as their daughter's wedding and vacation costs. Wire transfers to family members were in repayment of loans to the business. No company funds were used for tuition at the University of Dayton. Tuition was funded by several sources including a loan in Mrs. Medas' name and loans and grants in his daughter's name. There presently remains a sizeable balance owed on the college debt of over $51,000.00 pursuant to current records.

8. Finally, while any delay in E.P's scheduled operation is regrettable and was a result of Mr. Medas' failure to pay the approximately $600.00 premiums over a two month period, certain facts were not presented in the government's Memorandum. The defense believes it can demonstrate that as soon as the cancellation of insurance was brought to Mr. Medas' attention he immediately worked with a medical insurance broker to find replacement insurance, including working to enroll P.P. through the Affordable Care Act. As it turned out, the best option became insurance through P.P's wife's employment. Fortunately, the delay in the surgery was approximately two months and it thankfully was completely successful. None of this is an attempt to excuse Mr. Medas' failure to pay

over the monies deducted from P.P's pay, or to in any way minimize the harm, but rather is offered in order to provide a more comprehensive and balanced recitation of facts.

CONCLUSION AND PRAYER FOR RELIEF

Based upon the foregoing the Defense respectfully requests that the government's Memorandum be stricken from the record and preclusion of government argument thereon. Should the Court decline to grant this request, the defense alternatively requests that this matter be set for a hearing to provide a fair opportunity for the defense to refute the many instances of incorrect information or mischaracterizations contained in the Memorandum and to insure that this Honorable Court has before it only proper sentencing considerations as well as preservation of the record herein.

Respectfully submitted,

*/s/Robert A. Dixon*
Robert A. Dixon (0022466)
4403 St. Clair Ave.
Cleveland, Ohio 44103
(216) 432-1992
e-mail: Dixonlaws@aol.com

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was filed via the Court ECF in the United States District Court for the Northern District of Ohio at Cleveland, Ohio and served upon all parties of record by operation of that system this 9th day of February, 2022.

/s/*Robert A. Dixon*
Robert A. Dixon (0022466)