UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-255 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JOHN GEORGE MEDAS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On February 21, 2024, the Court entered an order denying the motion of defendant John George Medas ("Medas" or "defendant") to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 79 (Memorandum Opinion and Order); *see* Doc. No. 72 (Motion to Reduce Sentence).) While the Court determined that Medas was eligible under Part B of Amendment 821, relating to the treatment of "zero point offenders," it exercised its discretion and denied the motion for a sentence reduction, finding that "a reduction of [defendant's] sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence." (Doc. No. 79, at 6.)

Medas now seeks reconsideration of the Court's denial of his request for a sentence reduction under Amendment 821, Part B. (Doc. No. 85 (Motion for Reconsideration).) Plaintiff United States of America (the "government") opposes the motion for reconsideration. (Doc. No. 89 (Response to Motion for Reconsideration).) Medas has also filed a motion styled, "Emergency

Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A)." (Doc. No. 84 (Motion for Compassionate Release).) The government opposes this motion, as well. (Doc. No. 88 (Response to Motion for Compassionate Release).)

I.  **BACKGROUND**

On May 20, 2022, Medas was sentenced to an aggregate custody term of 24 months, following his guilty pleas to twenty-five counts of willful failure to collect, account for, and pay over tax, in violation of 26 U.S.C. § 7202 and 18 U.S.C. § 2; and embezzlement from a health care benefit plan, in violation of 18 U.S.C. §§ 669 and 2. (Doc. No. 57 (Judgment); *see* Doc. No. 37 (Plea Agreement); Minutes of Proceedings [non-document], 5/20/2022; Doc. No. 60 (Final PSR); *see also* Doc. No. 1 (Indictment).)

Medas was on bond at the time of sentencing. Over the next 12 months, the Court granted multiple motions to extend the deadline for Medas's self-surrender to the Federal Bureau of Prisons ("BOP"). (*See* Doc. Nos. 61–62, 64, 66–68, 70.) Each motion was premised on the fact that, following sentencing, Medas had been undergoing medical evaluation and treatment by private physicians for prostate cancer and coronary artery calcification. (*See, e.g.*, Doc. No. 70, at 1–2.) The final motion, filed on April 18, 2023, and granted the following day (April 19, 2023), provided that Medas had completed the prescribed regimen of 28 rounds of radiation therapy to treat his prostate cancer,[1] and he was being evaluated by a cardiologist to determine if his coronary artery issue could be treated with medication or would require a heart catheter or stent. (*Id.*) The

---

[1] In a letter from Medas's oncologist provided to the Court, dated February 8, 2023, Dr. Anthony Mastroianni stated that, because there was no evidence of metastatic disease, local therapy involving 28 consecutive days of radiation treatment was the indicated standard of care for Medas. (Court Only Letter, filed 2/10/2023.) Dr. Mastroianni stated that with this course of treatment, if administered in a timely fashion, Medas's "chance of local control and disease-free survival would be excellent." (*Id.*)

Court permitted Medas to delay his report date to permit him to receive the treatment and medical evaluation outlined in his motions. (Order [non-document], 4/19/2023.)

In accordance with the Court's order, Medas reported to BOP custody after May 4, 2023, and was placed at Butner FCI (Low), a federal medical corrections facility. (*See* Order [non-document], 4/19/2023.) He is currently housed at Cincinnati RRM and has a projected release date of August 7, 2024. (https://www.bop.gov/inmateloc/, last visited 5/9/2024.).

## II. LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Medas does not seek relief under Rule 35. Instead, he claims that he is entitled to a compassionate release. Citing his various medical conditions, the need to provide care for his elderly father-in-law, and recent changes to the United States Sentencing Guidelines, he argues

3

that he has demonstrated the existence of extraordinary and compelling reasons to justify his release to home confinement. (Doc. No. 84, at 1–2.) He appends to his motion, among other things, over 200 pages of personal medical records, a release plan, and a letter of remorse. (*See* Doc. Nos. 84-1 (Medical Records), 84-2 (Release Plan), 84-7 (Letter of Remorse).) The government opposes the motion and has appended to its response medical records from the BOP documenting the medical care Medas has received while incarcerated. (*See* Doc. No. 88-1 (BOP Medical Records).) Medas also seeks reconsideration of the Court's denial of his motion to reduce his sentence under Amendment 821, Part B, to the United States Sentencing Guidelines. The Court will address each motion.

**A. Motion for Compassionate Release**

Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *See United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted.)

The policy statement applicable to compassionate release motions, 18 U.S.C. § 1B1.13,

was recently amended (effective November 1, 2023) and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." 18 U.S.C. § 1B1.13(b).

There appears to be no dispute that Medas has exhausted his administrated remedies. (*See* Doc. No. 84-8 (BOP Administrative Reply).) The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended. Citing to the first category—medical circumstances of the defendant—Medas identifies the following medical conditions as constituting extraordinary and compelling reasons for release: prostate cancer, hypertension, mixed hyperlipidemia, coronary calcification, shortness of breath, dyspnea, obesity, pre-diabetes, hypertrophy, diastolic dysfunction, and AIVR (accelerate idioventricular rhythm). He also indicates that he continues to experience symptoms associated with long COVID. (Doc. No. 84, at 1.)

Under § 1B1.13(b)(1), a defendant's own medical condition (or conditions) may satisfy the extraordinary and compelling threshold if the defendant: has a "terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)[2]"; suffers from a "serious physical or medical

---

[2] Section 1B1.13(b)(1)(A) further provides that "A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."

condition," a "serious functional or cognitive impairment" or is experiencing "deteriorating physical or mental health" because of age that "substantially diminishes the ability of the defendant to provide self-care" in his facility and "from which he . . . is not expected to recover"; or is "suffering from a medical condition that requires long-term care or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1).

Medas does not demonstrate that he suffers from a terminal illness or a serious medical condition that substantially diminishes his ability to provide self-care. While he identifies prostate cancer as one of his medical conditions, the record is clear that the Court substantially delayed his report date to permit him to receive the full prescribed treatment for this condition before he entered prison. Given that his treating physician indicated that there was no evidence that his cancer had metastasized and that the prescribed course of treatment would allow for an excellent prognosis (Court Only Letter, filed 2/10/2023 (with timely treatment, the "chance of local control and disease-free survival would be excellent")), his prostate cancer does not qualify under the governing statute as a terminal illness. Medical records from the BOP further demonstrate that the BOP continues to monitor the situation and is providing appropriate post-treatment surveillance, including PSA draws. (*See* Doc. No. 88-1.) Likewise, the supplied medical records demonstrate that the BOP continues to monitor and treat Medas's heart-related conditions, including the continuation of medication prescribed by his personal physician before he entered prison. (*See id*.)

Medas's medical conditions, either separately or collectively, also do not demonstrate that he suffers from one or more serious medical conditions that substantially diminishes his ability to provide self-care, nor does he point to any evidence that he is being denied necessary long-term or

specialized care. While he maintains that he has lost 36 pounds while incarcerated, Medas concedes (and the BOP medical records confirm) that he suffers from obesity and there is no indication in the records that his weight loss was dangerous or contra-indicated. (*See* Doc. No. 84, at 1.) He also claims that he is not receiving "attentive blood pressure checks," but the BOP's medical records belie this claim. (*See* Doc. No. 88-1.) In short, the BOP appears to be properly treating and controlling Medas's non-terminal medical conditions. His combined medical conditions, therefore, do not rise to the level of extraordinary and compelling reasons justifying early release.

Medas's second identified reason—family circumstances of defendant—also fails to meet the threshold requirement for compassionate release. Section 1B1.13(b)(3) provides, in part, that the "incapacitation" of the defendant's spouse or registered partner or parent may qualify as an extraordinary and compelling reason for early release where "the defendant would be the only available caregiver[.]" § 1B1.13(b)(3)(B)–(C). Subsection (D) permits the defendant to similarly meet the initial threshold for compassionate release by establishing the incapacitation of another "immediate family member or an individual whose relationship with the defendant is similar in kind to [a child, spouse, registered partner, or parent]," and that defendant "would be the only available caregiver for such family member or individual." § 1B1.13(b)(3)(D). For purposes of this subsection, the Sentencing Commission defined "immediate family member" as "any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant." *Id*.

Medas maintains that his father-in-law, who is 94 years old and "requires daily care[,]" will be moving into the home he and his wife own. (Doc. No. 84, at 2.) He explains that his wife,

Julie Medas, "is unable to physically lift" her father and "provide care for him while at home." (*Id.*) Appended to his motion is a letter from Julie wherein she states that she is "very concerned that [she] will not be able to provide [her] father with all the daily living assistance that he is beginning to require[,]" noting, that she is "not physically able to lift [her] father[.]" (Doc. No. 84-6, at 1.) Medas, she continues, is "physically able and willing to help [her] provide [her] father with all assistance that he should need." (*Id.*)

Assuming that Medas's father-in-law qualifies as an "immediate family member" under § 1B1.13(b)(3)(D), Medas has failed to demonstrate that his father-in-law is incapacitated. Medas provides no documentation to establish his father-in-law's medical condition(s), nor does he offer any substantiation for the claim that his father-in-law is incapable of self-care. At best, Medas's undocumented account of his father-in-law's situation establishes that his father-in-law is beginning to experience mobility issues associated with advanced age and may require more assistance in the future. Further, to the extent that his father-in-law requires immediate medical intervention, Medas has failed to establish that he is the only available caregiver. While Julie explains that her only sibling lives six hours away, the record shows that Medas and Julie have four adult children, three of whom live in Northeast Ohio. (*See* Doc. No. 60, at 15 ¶ 58.) There is no evidence that one of them—or another family member—cannot provide assistance with the "daily living assistance [Medas's father-in-law] is beginning to require." (*See* Doc. No. 84-6, at 1.)

But even if Medas had cleared this initial hurdle, the Court would still have denied his motion because the sentencing factors in § 3553(a) do not favor release. *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to

consider all relevant statutory factors). As the Court found when it denied Medas's motion to reduce his sentence, "[t]he nature and circumstances of defendant's offenses were serious and continue to support a significant sentence." (Doc. No. 79, at 5.) As the Court previously observed,

> The amount of money defendant unlawfully withheld from the United States Treasury in the form of unpaid federal income taxes and FICA taxes was substantial, amounting to more than $500,000.00. (*See* Doc. No. 31, at 10 ¶ 29 and Doc. No. 60, at 10 ¶ 29.) The impact felt by defendant's human victims also underscores the severity of defendant's illegal actions. Victim impact statements offered at sentencing reflect that defendant's actions resulted in employees of defendant's companies, and their families, suffering physical, financial, and emotional hardships. (*See also, e.g.*, Doc. No. 31, at 10 ¶ 30 and Doc. No. 60, at 10 ¶ 30.)

(*Id.*) With respect to Medas's human victims, the Court noted that the minor daughter of one of Medas's employees was forced to delay a necessary surgery for a serious condition because defendant's failure to pay into the company's health plan caused a lapse in the family's healthcare coverage. (*Id.* at 5 fn.4.)

Little has changed since the Court's ruling on the motion to reduce sentence. The nature and circumstances of the offenses remain serious and warrant a significant sentence, and Medas's current sentence still falls within the advisory guideline range, even after applying the recent amendments to the sentencing guidelines. And while Medas has now supplemented the record with additional documentation relating to his medical conditions, these records do not justify early release. The Court has considered the programming defendant has completed in prison, his incident-free disciplinary record, his release plan, and his letter of remorse. But after considering all of the § 3553(a) factors, the Court (again) finds that a reduction of Medas's sentence would undermine the need for the sentence imposed to reflect the seriousness of the crimes committed, promote respect for the law, provide just punishment, and afford adequate deterrence.

Medas's motion for compassionate release is denied.

**B. Motion for Reconsideration**

Medas also seeks reconsideration of the Court's denial of his motion to reduce his sentence. (*See* Doc. No. 79.) The Federal Rules of Civil Procedure do not expressly provide for a "motion for reconsideration." In the Sixth Circuit, a motion for reconsideration may be pursued as a motion to alter or amend the court's judgment under Fed. R. Civ. P. 59(e), provided it is filed within 28 days of the court's judgment or order. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617–18 (6th Cir. 2022) (citations omitted). Under Rule 59(e), a district court may amend a judgment only "if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Patel v. Hughes*, No. 22-5696, 2023 WL 3318391, at *5 (6th Cir. May 9, 2023) (quoting *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017)).

The "purpose of Rule 59(e) is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quotation marks and citations omitted). It is not a vehicle to reargue the case, or present arguments or evidence that could have and should have been raised in connection with an earlier motion. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *see Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (A Rule 59(e) motion is not to be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (quotation marks and citation omitted)).

Medas neglected to file his motion for reconsideration within the 28-day window for Rule

10

59(e) motions to alter or amend. He also failed to identify a clear error of law committed by the Court, an intervening change in controlling law, newly discovered evidence,[3] an intervening change in controlling law, or a need to prevent manifest injustice. But even if the request is considered under Rule 60(b), which contains a more generous one-year time limit for filing, it would fail. *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998) (When a party's Rule 59 motion is not filed within the mandatory 28-day period, the Court may consider the motion as one for relief from judgment pursuant to Rule 60(b)). Rule 60(b) sets out six reasons for which the Court is authorized to grant relief: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; and (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Most grounds for relief under Rule 60(b) "relate to, if not require, new information *about the case* that could not reasonably have been discovered earlier." *GenCorp. Inc. v. Olin Corp.*, 477 F.3d 368, 372 (6th Cir. 2007) (emphasis added). Relief from judgment under Rule 60(b)(6)—the catch-all provision—is available "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry & Wright Corp.*, 910 F.2d

---

[3] To the extent Medas relies on the medical records he recently supplied to the Court in support of his request for compassionate release, these records would not qualify as "newly discovered evidence." It is well settled that evidence that was available at the time the original motion was filed does not constitute newly discovered evidence under Rule 59(e). *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 567 (6th Cir. 2016) (noting it is "well established" that Rule 59(e) relief is not warranted "when [a motion] is premised on evidence that the party had in his control prior to the original entry of judgment" (quotation marks and citation omitted)); *see Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010) ("Newly discovered evidence must have been previously unavailable." (citing *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999))). Here, all of the medical records proffered by defendant, many of which involved medical treatment Medas received before he entered prison, were available to him at the time he first sought a sentence reduction. Accordingly, they do not qualify as newly discovered evidence.

357, 365 (6th Cir. 1990) (quotation marks and citations omitted).

Medas does not identify any new information about his case that he could not have reasonably discovered earlier. He further fails to invoke any of the six enumerated reasons for relief under Rule 60(b). Rather, Medas simply takes issue with the Court's evaluation of his motion to reduce and its decision to deny him relief. (*See, e.g.*, Doc. No. 85, at 2–3 ("The Defendant disagrees with the Court on this matter and asserts that a 24-month custody term-a high end guideline sentence under the NEW range is greater than necessary to effect the purposes of sentencing" (capitalization in original)); *id.* at 6 ("The Defendant refutes the Court's findings on this matter").) Motions for reconsideration are simply not designed to permit a disappointed litigant to attempt to persuade the Court to change its mind. *Database Am. v. Bellsouth Advert. & Publ'g*, 825 F. Supp. 1216, 1219–20 (D. N.J. 1993) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." (quotation marks and citations omitted)). "When [as here] a motion for reconsideration raises only disagreement by a party with a decision of the court, that dispute 'should be dealt with in the normal appellate process, not on a motion for reargument.'" *Baynard v. Commonwealth Inv. Ltd.*, No. 2:14-cv-1367, 2016 WL 9343176, at *2 (S.D. Ohio Oct. 11, 2016) (quoting *Database*, 825 F. Supp. at 1220).

Further, the Court has already revisited the § 3553(a) sentencing factors in its ruling on defendant's motion for compassionate release. Even with the newly presented medical records, the

12

Court has determined that a reduction in sentence is not warranted.[4] The same analysis and conclusion applies to the present motion for reconsideration. Accordingly, the motion for reconsideration is denied.

### III. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Court's February 21, 2024 ruling on defendant's motion to reduce sentence, the motions for compassionate release (Doc. No. 84) and for reconsideration (Doc. No. 85) are denied.

**IT IS SO ORDERED**.

Dated: May 9, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] In his request for reconsideration, Medas claims that the Court impermissibly considered evidence from civil litigation between defendant and some of his former employees. (*See* Doc. No. 85, at 4–5.) This is untrue. Rather, the Court properly referred to victim impact statements in its consideration of the seriousness of the offenses. (*See* Doc. No. 79, at 5 & fn.4.)

13